

# NUMBER 13-14-00133-CR

# COURT OF APPEALS

# THIRTEEN DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**REYNALDO ALBERTO CANTU,** Appellant,

**v.**

**THE STATE OF TEXAS,** Appellee.

---

### On appeal from the 24th District Court of Calhoun County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Contreras and Benavides Memorandum Opinion by Chief Justice Valdez

Appellant, Reynaldo Alberto Cantu, was convicted of continuous sexual abuse of a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 21.02(b) (West. Westlaw through 2017 1st C.S.). Appellant received a life sentence. By one issue, appellant contends that the evidence is insufficient to establish that multiple acts of sexual abuse occurred within a period of thirty days or more. We affirm.

## I. BACKGROUND

N.S.'s mother testified that she started dating appellant who subsequently moved into her residence. According to N.S.'s mother, she left N.S. alone with appellant at their residence, and she was away for approximately fifteen minutes.[1] N.S.'s mother testified that when she returned, she found appellant sitting on a coffee table not wearing any pants or underwear, and N.S. was sitting on the couch in front of him. N.S.'s mother stated that appellant "said that he was sorry," and "that he didn't hurt her." N.S.'s mother testified that N.S. was very upset and scared. N.S.'s mother said that she left the residence with her children, and appellant texted her stating that "he was sorry for what he had done; that he knew it was wrong, but he couldn't help himself." According to N.S.'s mother, she met with appellant to discuss what he had done; however, although appellant apologized for what he had done to N.S., he did not tell N.S.'s mother what he had done to N.S. N.S.'s mother then called the police.

Jennifer Mumphord, a sexual assault nurse examiner (SANE) who examined N.S. after the incident, testified that N.S., a ten-year old, told her that appellant while wrapped in a towel, exposed himself to her and told her to "suck it." N.S. told Mumphord that she complied with appellant's request for approximately thirty seconds. According to Mumphord's report, N.S. stated that on another occasion, her mother ran an errand with N.S.'s sister, and N.S. was alone with appellant who "pulled his pants down and pulled [hers] down." N.S. said, "He sat on the coffee table, then that's when I heard my sister. I turned around and it was my mother. He said, I did nothing to her."

---

[1] The State prosecutor inadvertently asked N.S.'s mother to state what had occurred on September 27, 2012; however, it is clear from the evidence, including the SANE report, that the incident occurred on October 27, 2012. Thus, we will refer to this incident as the October 27 incident.

According to Mumphord's report, N.S. told Mumphord that this was not the first incident and said, "He had me do lots of stuff, like touch myself." N.S. stated, "Sometimes he makes me hold it and move my hand around. Sometimes he makes me put it in my mouth and sometimes his private goes into my private." N.S. told Mumphord that on the previous night, appellant "pulled down [her] pants, put [her] on the bed and unzipped his zipper" and then put "his private in [her] private." N.S. said,

> I think it started about one or two months ago and he did something a few times a week. It all started when I was sitting on the couch and I had a blanket over me and he stuck his hand under the blanket and just put it on top of here—points to the top of vagina area. He just kind of left it there and then the next time he went inside my pants with it and then inside my underpants.

N.S. told Mumphord, "Sometimes he comes in my room while I'm sleeping and takes down my underpants and licks my private part. Sometimes I wake up, but just pretend like I'm sleeping . . . I think he must come in every night." N.S. stated that appellant once put his finger in her vagina, it hurt, and she bled. N.S. said, "Sometimes it can be in my room, or my mom's room, or the living room, kitchen, or the back room, even in the bathroom when I'm on the toilet." Mumphord stated that a portion of N.S.'s hymen was missing, which is consistent with her statement.

During an interview with police, appellant stated that he was sorry for what he did, and he admitted that he did "it." The officer asked appellant to clarify what exactly happened, and appellant claimed that N.S. had overheard appellant and N.S.'s mother having sex because there are no doors in the bedrooms and that N.S. was just curious. Appellant did not clarify what he had done. The officer asked appellant to explain what occurred, and appellant replied, "I regret it. I know what I did was wrong. It was wrong. I know it's wrong." The officer asked appellant what he actually did, and appellant

3

responded, "I dropped my pants." Appellant said that N.S. was in front of him, he dropped his pants, and he heard somebody come into the house. When the officer asked if anything else happened in the past, appellant claimed that N.S. had grabbed his hand and put it between her legs. Appellant stated that he should have told N.S.'s mother and should have stopped "it." Appellant denied having oral sex with N.S. and putting his penis in N.S.'s vagina. Appellant said, "basically finger touching, and this and that and that's it." Appellant also admitted exposing himself to N.S.

N.S., who was eleven at the time of the trial, testified that she "did not have an answer" to the State's question concerning how long she knew appellant. N.S. stated that on October 27, 2012, appellant pulled down her clothes and he was touching her when her mother walked into the residence. N.S. stated that appellant had his pants pulled down. N.S. could not remember the morning of the October 27 incident. However, N.S. recalled that on the night prior to the October 27 incident, appellant took her to a room and he touched her and put his private in her private. When the State asked N.S. if that was the first time that appellant had done that to her, N.S. said, "No." N.S. testified that appellant would touch her private with his fingers on the table in the kitchen and touch her private with his fingers in the living room. N.S. stated that she would touch appellant's private, and she would put her mouth on his private. N.S. said that appellant would touch her at his shop and that it happened on more than one occasion. N.S. testified that in the bathroom, appellant would put his fingers in her private and put his private in her private. According to N.S., in her mother's room, appellant put his finger "in" her, scratched her vagina, and she started bleeding. N.S. stated that appellant put his mouth on her private on more than one occasion in different parts of the house.

4

On cross-examination, N.S. testified that appellant and her mother had been together for approximately "a year or two," and appellant lived with them for approximately a year and a couple of months. N.S. stated that no one except appellant had explained to her the meaning of sex and that she does not have a word to describe either a man's or a woman's private part. N.S. testified that the abuse began a couple of months before she was examined by the SANE. N.S. said that "it" happened "[l]ike not every single day of the week, but a couple of days of the week."

## II. STANDARD OF REVIEW AND APPLICABLE LAW

To determine whether the evidence is legally sufficient, we consider all of the evidence in the light most favorable to the verdict and determine whether a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.) (explaining that we consider "all of the evidence in the light most favorable to the verdict," and determine whether the fact finder was rationally justified in finding guilt beyond a reasonable doubt). We measure the legal sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Coleman v. State*, 131 S.W.3d 303, 314 (Tex. App.—Corpus Christi 2004, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The elements of the offense of continuous sexual abuse of a child are:

> (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.

5

TEX. PENAL CODE ANN. § 21.02(b).  An "act of sexual abuse" is an act that violates one or more specified penal laws, among them indecency with a child by contact, aggravated sexual assault of a child, sexual assault of a child, and sexual performance by a child.  *Id.* § 21.02(c).  Indecency with a child by sexual contact constitutes an act of sexual abuse if a person, (1) with the intent to arouse or gratify the sexual desire of any person, (2) engages in sexual contact with a child, whether the child is of the same or opposite sex, (3) by touching, including touching through the clothing, the anus or any part of the genitals of a child.  *Id.* §§ 21.02, 21.11 (West, Westlaw through 2017 1st C.S.).  A person commits aggravated sexual assault of a child if:  (1) the person intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means, causes the penetration of the mouth of a child by the sexual organ of the actor, causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor, or causes the mouth of a child to contact the anus or sexual organ of another person, including the actor; and (2) the victim is under fourteen years of age.  *See id.* § 22.021(a)(1)(B)(i), (ii), (iii), (v), (a)(2)(B)(1) (West, Westlaw through 2017 1st C.S.).

### III.    DISCUSSION

By his sole issue, appellant contends that the evidence is insufficient because the State did not "prove that two or more clearly defined 'acts of sexual abuse' were committed within thirty or more days of each other."

Appellant argues that the State did not prove the duration element of continuous sexual abuse of a child because N.S. told the SANE that "[i]t all started when I was sitting on the couch and I had a blanket over me and he stuck his hand under the blanket and

6

just put it on top of here—points to the top of vagina area. He just kind of left it there and then the next time he went inside my pants with it and then inside my underpants." Under appellant's interpretation of N.S.'s statement to the SANE, N.S. meant that appellant "touched her pelvis above her vagina" and "sometime later touched her pelvis above her vagina under her pants and underpants." Thus, according to appellant, the acts he committed when "it" started one or two months prior to N.S.'s statement to the SANE do not constitute a sexual act as defined by section 21.02 of the penal code.

Viewing the evidence in the light most favorable to the verdict, as we must, we disagree with appellant because at trial, N.S. testified that appellant committed multiple sexual acts with her on multiple occasions and that the abuse had begun approximately one or two months prior to the examination of the SANE. Thus, a rational jury could have reasonably found that when N.S. stated that appellant put his hand under the blanket and "on top of here" pointing to the top area of her vagina, appellant had touched N.S.'s genitals. *See Clark v. State*, 558 S.W.2d 887, 889 (Tex. Crim. App. 1977) ("The definition of 'sexual contact' under the statute includes the touching of 'any part of the genitals' of a person. Thus, the statute includes more than just the vagina in its definition; the definition of 'genitals' includes the vulva which immediately surrounds the vagina."). Appellant also argues that during cross-examination by appellant's trial counsel, N.S. said that "the molestations occurred less than a month apart, more like twenty (20) to (25) days apart." However, N.S. also stated that the abuse had started a couple months prior to the SANE exam. "The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to

7

reconcile conflicts in the evidence." *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Accordingly, we overrule appellant's issue.

## IV.    CONCLUSION

We affirm the trial court's judgment.

ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
11th day of January, 2018.